UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| MIRNA MICHEL JABBOUR and ) <br> NATIONAL DEFENSE COMMITTEE, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JOHN H. MERRILL, in his official ) <br> capacity as Alabama Secretary of State, ) <br> MOBILE COUNTY BOARD OF ) <br> REGISTRARS, KYLE CALLAGHAN, ) <br> in his official capacity as a member of ) <br> the Mobile County Board of Registrars, ) <br> JUDY MOTLOW, in her official ) <br> capacity as a member of the Mobile ) <br> County Board of Registrars, and RON ) <br> REAMS, in his official capacity as a ) <br> member of the Mobile County Board ) <br> of Registrars, ) <br> ) <br> Defendants. ) | Case No. 1:20-cv-00034-JB-N |

**PLAINTIFFS' REPLY TO STATE DEFENDANTS'
OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs' Motion for Preliminary Injunction ("Motion") seeks to protect the status quo by preventing Plaintiffs and those similarly situated to them from being forced to vote under Alabama's unconstitutional RCV Scheme. Alabama's RCV Scheme is unconstitutional because it burdens rights protected by the First and Fourteenth Amendments. Because the RCV Scheme is unconstitutional, and Plaintiffs have shown as such in their Motion for Preliminary Injunction and

Opposition to the State's Motion to Dismiss, Plaintiffs are likely to succeed on the merits of their claims. If Plaintiffs and those similarly situated to them are forced to vote using the RCV Scheme during a runoff election, the harms to their constitutional rights become irreparable and cannot be undone. The constitutional harms the RCV Scheme impose on UOCAVA voters are severe and far outweigh any slight burden the state may face as a result of an injunction. Moreover, because enforcement of an unconstitutional law is always contrary to the public interest, the public interest rests with enjoining Alabama's RCV Scheme. For these reasons, this Court should grant Plaintiffs' Motion for Preliminary Injunction.

Nothing in the State's Opposition Brief or Motion to Dismiss convincingly makes an argument that the RCV Scheme is constitutional. Indeed, the State does not even bother to argue that the RCV Scheme does not substantially burden Plaintiffs' rights, but rather makes unconvincing collateral arguments. Because Alabama's RCV Scheme imposes substantial burdens on UOCAVA voters' constitutional rights, this Court should grant Plaintiffs' Motion for Preliminary Injunction and deny Defendants' Motion to Dismiss.

### I.   Plaintiffs Are Likely To Succeed On The Merits And Will Suffer An Irreparable Harm.

Plaintiffs are likely to succeed on the merits of their claims, because the RCV Scheme is unconstitutional, and they will suffer irreparable harm absent an

injunction, as is laid out in Plaintiffs' Opposition to the State's Motion to Dismiss. Pls.' Opp.'n to Defs.' Mot. to Dismiss at 9-23.

Contrary to the State's arguments, Plaintiffs have standing to bring these claims and those claims are far from meritless. *Id.* The confusing nature of the UOCAVA application as it pertains to Alabama's partisan primary and runoff elections, as well as the confusing nature of the RCV Scheme itself, resulted in Plaintiff Jabbour only selecting one box on her application. (Doc. 29, PageID#509-11). She intended and desired to vote in Alabama's Republican Primary Election and any resulting Primary Runoff Election. *Id.* As soon as Plaintiff Jabbour was informed that the State did not consider her application to be one for which she would receive a Primary Election ballot she began the process of applying for a ballot for the Republican Primary Election. *Id.* She has now completed a new application in such a way as the State indicated would qualify her to receive a Primary Election ballot and has submitted the application to the Mobile Absentee Election Manager. *See* Third Declaration of Mirna Michel Jabbour ¶¶ 1-3, attached as Exhibit 1 to Plaintiffs' Opposition to the State's Motion to Dismiss. Plaintiff Jabbour's renewed application for an absentee ballot for the Republican Primary Election along with the Supplemental Complaint filed contemporaneously with this brief, relate back to her original complaint and are sufficient to maintain her standing. Pls.' Opp.'n to Defs.' Mot. to Dismiss at 7-8.

Accordingly, the first two preliminary injunction factors weigh in Plaintiffs' favor.

## II. Plaintiffs' Injuries Far Outweigh Any Slight Burden To The State And An Injunction Is In The Public Interest.

Both the balance of equities and the public interest are best served by preventing Alabama from forcing UOCAVA voters the use the unconstitutional RCV Scheme. Doing so would irreparably burden Plaintiffs and all other Alabama UOCAVA voters' First and Fourteenth Amendment rights. *See supra*; Opp. to Mot. to Dismiss at 10-23; (Doc. 3, PageID#80-98). The looming irreparable injury that the RCV Scheme causes to voters' most sensitive rights clearly outweighs any minimal burden that the State might shoulder in having to properly distribute separate ballots for runoff elections. (Doc. 3, PageID#98-99). *See also Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) (stating "administrative convenience" cannot justify the deprivation of a constitutional right).

In arguing the opposite, the State devotes much of its opposition brief to arguing, *inter alia*, that because ballots have already been sent to UOCAVA voters, the election is "underway" and cannot be changed at all. However, the State's arguments to this point ignore the reality that the Primary Runoff Election is an entirely different election from the Primary Election. *See* Ala. Code § 17-13-18. The fact that Alabama forces UOCAVA voters to vote in two elections using only one ballot does not change the inescapable reality that the Primary and Runoff

election are two separate elections. In fact, the injunction of Alabama's RCV Scheme would not change how the State counts UOCAVA ballots for the Primary Election or how UOCAVA voters would indicate their Primary Election votes. The first choice of each UOCAVA voter would still be counted and each of those votes would still be added to the tally for that candidate in the Primary Election. Once counted toward the Primary Election, the RCV ballots would be set aside and a separate ballot for the Runoff Election, similar to the absentee ballot the State sends to non-UOCAVA voters, would be sent to UOCAVA voters along with a very simple and short explanation that the previous RCV Scheme has been enjoined along with equally simply instructions. The runoff ballots would then be counted toward the Runoff Election rather than using the RCV ballot. This would not unduly burden the State nor any UOCAVA voter because it would not change their Primary Election methodology at all.

The State incorrectly argues that an injunction would burden the State causing the balance of equities to tip in its favor because this proceeding would not fall under 52 U.S.C. § 20302(g)(2)(B)(ii)'s definition of "legal contest". (Doc. 30, PageID#545). The State could not be more wrong because the present case is exactly the kind of "legal contest" the statute contemplates. For example, a UOCAVA waiver has been granted for a legal contest involving a ballot access contest in New York in 2016. *See Martins v. Pidot*, 663 Fed. Appx. 14 (2nd Cir.

2016). In that ballot access litigation, a congressional candidate, Philip Pidot, was removed from the ballot after the signatures he received in order to gain access to the ballot were challenged. *Id*. However, it was later ruled that Pidot had received the requisite signatures to be included on the ballot. *Id*. Accordingly, the United States District Court for the Northern District of New York (Scullin, J.) ruled that a new special primary election would be held on October 6, 2016. *Id*. Because that the new special primary election was too close in time to the statutory 45-day UOCAVA deadline, the State of New York Requested an undue hardship request pursuant to 52 U.S.C. § 20302(g)(2)(B)(ii)'s "legal contest" provisions. 2016 New York State Undue Hardship Waiver Request, https://www.fvap.gov/info/news/2016/8/30/state-of-new-york-uocava-waiver-request; *See also* State of New York Requests Waiver Of UOCAVA's 45-Day Requirement for New York's Third Congressional District FVAP.gov (Aug. 30, 2016), https://www.fvap.gov/info/news/2016/8/30/state-of-new-york-uocava-waiver-request. On August 29, 2016 the Department of Defense approved New York's request. Department of Defense Response to New York Waiver Request, (Aug. 29, 2016), https://www.fvap.gov/uploads/FVAP/EO/DoD_NY_WaiverResponseCompiled_20160829_final.pdf.[1] Since UOCAVA waivers have been granted under 52 U.S.C. §

---

[1] The Department of Defense approved New York's UOCAVA waiver request before the United

20302(g)(2)(B)(ii) in similar circumstances, there is no reason to believe, and the State cannot point to any reason, why this matter would not be considered a "legal contest" sufficient to justify approval of a waiver application.

The State goes on to incorrectly argue that the various steps necessary to apply for an undue hardship waiver under UOCAVA create burdens which outweigh those on Plaintiffs' constitutional rights. (Doc. 30, PageID#545). Such reasoning makes it impossible to ever operate UOCAVA's legal contest waiver provisions, 52 U.S.C. § 20302(g)(2)(B)(ii). Plaintiffs also invite this Court's attention to the fact that the time period between Primary Election and Runoff Election has been repeatedly shortened over and over again by the State. (Doc. 30, PageID#542); (Doc. 3, PageID#96). Alabama has voluntarily shortened the period between the Primary Election and the Runoff Election from nine weeks to six weeks with the implementation of the RCV Scheme in 2015, and now to just four weeks with the implementation of a 2019 amendment. *See id*. The State should not now be able to complain of hardship due to its own voluntary and repeated shortening of the period between elections. This is especially true where the State has admitted in previous litigation that it should move the date of the Primary Runoff Election to accommodate UOCAVA voters and to do so would be the

---

States Court of Appeal for the Second Circuit's decision that vacated the district court's decision—on grounds unrelated to the UOCAVA waiver—in *Martins v. Pidot*, 663 Fed. Appx. 14 (2d Cir. 2016).

preferred long-term solution for UOCAVA's 45-day requirement. *See* (Doc. 3, PageID#95-96).

In an attempt to characterize this suit as having "timing issues", the State cites *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam), a case where the U.S. Supreme Court allowed an election to proceed without an injunction suspending voter identification rules because the challenge was brought shortly before a general election. (Doc. 30, PageID#548). The fact that the present case involves a primary runoff election, and not a general election (which effects costs and voters in greater volumes) further sets this case apart from *Purcell* because with fewer voters, and even fewer voters casting UOCAVA Ranked Choice ballots, Packard Decl. ¶ 11 (PageID#174) (stating that Alabama has 498 UOCAVA voters), the administrative burdens on Alabama are lesser than those of a general election. Furthermore, other courts have granted preliminary injunctions in cases with similar and even less time prior to an election. *See, e.g., N.Y. Progress & Protection PAC v. Walsh*, 733 F.3d 483, 485-86, 489 (2d Cir. 2014) (granting preliminary injunction when suit was filed 41 days before the election). In another case, *League of Women Voters of Pa. v. Pennsylvania*, 645 Pa. 1 (Pa. 2018), the Pennsylvania Supreme Court went much farther than Plaintiffs ask this Court to go. That court invalidated and redrew Pennsylvania's entire congressional districting plan in February, 2018 when candidate petitions were already being

circulated, with filing deadlines in March, and the primaries taking place in May. Surely, if courts can tolerate such a significant disruption as the upheaval of an entire statewide congressional map just weeks before pertinent deadlines and an election, this Court can enjoin an unconstitutional ranked choice voting regime that will not affect the Primary Election but rather the Primary Runoff Election, should there even be one.The State also seems to argue that because not *all* of Alabama's UOCAVA voters are Plaintiffs in this case, the public interest may lay with utilizing the unconstitutional RCV Scheme. Specifically, the State argues—without any evidence, citation, or merit—that some UOCAVA voters may "prefer or benefit from" the RCV Scheme. (Doc. 30, PageID#542, 547-48). Aside from the State's complete lack of evidence or authority on this point, which it seems to conjure out of thin air, the public interest can never rest with the enforcement of unconstitutional voting laws. *See, e.g., Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006); (Doc. 3, PageID#99-100).

    **III.**    **This Court Should Not Require Plaintiffs To Pay Security**

In an effort to intimidate Plaintiffs out of this suit, the State asks this Court to require security from Plaintiffs if it grants a preliminary injunction. Although Fed. R. Civ. P. 65(c) does provide for security in such an issuance, "it is well-established that 'the amount of security required by the rule is a matter within the

discretion of the trial court . . . [, and] the court may elect to require no security at all.'" *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs.*, LLC, 425 F.3d 964, 971 (11th Cir. 2005) (quoting *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B 1981)). Plaintiffs here, an individual and a non-profit organization, are engaged in public interest litigation, an area in which courts have recognized an exception to the Rule 65 security requirement. *See Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d at 1094. Indeed, "it is not uncommon, in public interest actions such as the instant one, to require only nominal security under Rule 65(c)." *Alabama ex rel. Baxley v. Corps of Engineers of United States Army*, 411 F. Supp. 1261, 1275 (N.D. Ala. 1976). See also *Id.* at 1275-76 (aggregating decisions requiring only nominal security). Accordingly, given the status of Plaintiffs as an individual and a non-profit organization and the public interest nature of the case, this Court should not require Plaintiffs to pay security pursuant to Fed. R. Civ. P. 65(c) or only require nominal security be paid.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Preliminary Injunction and direct the Secretary to suspend his implementation of the RCV Scheme.

Respectfully submitted February 26, 2020,

/s/ Matthew R. Jackson
Matthew R. Jackson (JACKM7882)
C. Britton Bonner (BONNC0122)
ADAMS AND REESE LLP
11 N. Water Street, Suite 23200
Mobile, Alabama 36602
(251) 433-3234 (Phone)
(251) 438-7733 (Fax)
britton.bonner@arlaw.com
matt.jackson@arlaw.com
*Counsel for Plaintiffs*

Jason B. Torchinsky*
Jonathan P. Lienhard*
Shawn Sheehy*
Dennis W. Polio*
HOLTZMAN VOGEL JOSEFIAK
TORCHINSKY, PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
(540) 341-8808 (Phone)
(540) 341-8809 (Fax)
Jtorchinsky@hvjt.law
Jlienhard@hvjt.law
Ssheehy@hvjt.law
Dwpolio@hvjt.law
*pro hac vice* applications pending
*Counsel for Plaintiffs*
Erik S. Jaffe*
SCHAERR-JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
 (202) 787-1060 (Phone)
ejaffe@schaerr-jaffe.com
*pro hac vice* application to be filed
*Counsel for Plaintiffs*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been filed this 26th day of February 2020 using the CM/ECF system which instantaneously sent a Notice of Electronic Filing (NEF) to all counsel required to be served.

*/s/* Matthew R. Jackson
Matthew R. Jackson
